## THE STATE OF IOWA v. PIERCE.

Section six of chapter 133 of the Laws of 1858, entitled "An act to amend chapter 96 of the Code," was intended to meet the case where *all* the persons summoned as grand or petit jurors, fail to attend, or where it is determined by the court, that, for any cause, they were illegally elected and drawn.

The act entitled "An act to amend chapter 96 of the Code," approved March 22, 1858, (Acts of 1858, 257), does not repeal section 1647 of the Code, by express words, nor is there any conflict between the two. The latter governs where a sufficient number of jurors fail to attend, and the former, where *all* fail, or where the selection and drawing were illegal.

Where to an indictment for forgery, the defendant pleaded that all of the grand jurors summoned by the sheriff, under the precept issued to him, did not attend at the time appointed, and thereupon the court directed the sheriff to complete the panel, by selecting talesman, and prayed that the indictment be set aside, to which plea, a demurrer was sustained; *Held*, That the demurrer was properly sustained.

Where a party is charged with forging an indorsement on the back of an order or draft *purporting* to have been drawn by one bank upon another, proof of the existence of the bank is not required; nor is it necessary to aver the genuineness or validity of the instrument forged.

The language, spirit, scope and tenor of section 2643 of the Code, shows that it extends to cases for falsely making and uttering indorsements on any note, bill, order or instrument, as well as to falsely making and uttering the body of the instrument itself.

The essence of the crime of forgery, consists in doing the act, with the intention to defraud.

Where a writing is invalid on its face, it cannot be the subject of forgery, for the reason that it has no legal tendency to effect a fraud; but where the invalidity is to be made out by proof of some extrinsic fact, the instrument, if good on its face, may be legally capable of effecting a fraud, and the party making the same, may be punished.

The State of Iowa v. Pierce.

In order to constitute the crime of forgery, it is not necessary that any person should have been defrauded in fact. The attempt to defraud, and the intention to do so, is sufficient.

In the absence of any statutory rule, the order of proceedings in challenging petit jurors, may be properly left to the discretion of the judge trying the cause; and such discretion will not be interfered with, unless it is clearly made to appear that it has been abused.

Where on the trial of an indictment, the district attorney challenged a juror peremptorily, and then the defendant one; and where, the panel of jurors being filled, the defendant insisted that the state should exercise a second peremptory challenge, if any more were to be made, which the court refused, and required the defendant to challenge the second time, before the state exercised the right, holding that upon his failure to do so, the defendant would waive the privilege as to one juror; *Held*, That the rule adopted by the court was fair and equitable.

Where the name of L. H. Mason was indorsed on the indictment, as a witness on the part of the state, and on the trial, the state called *Levi* H. Mason, to whom the defendant objected, for the reason that his name was not upon the indictment, and no notice had been given, as required by the act entitled "An act amending section 2913 of the Code," &c., approved March 22, 1858, which objection was overruled, and the witness permitted to testify; *Held*, That the objection was properly overruled.

*Appeal from the Linn District Court.*

MONDAY, APRIL 11.

THE defendant was indicted for forgery, in writing the name of one Fay across the back of a certain order, drawn by a bank in Rhode Island on a bank in New York, with intent to defraud, &c. Objections were made to the manner of impanneling the grand and petit jury, as also to the indictment, all of which were overruled. Exceptions were taken to the admission of certain testimony, and to the giving and refusing of certain instructions. Defendant was found guilty, and sentenced to the penitentiary for three years. The other material facts are stated in the opinion of the court.

*I. M. Preston*, for the appellant.

*S. A. Rice*, (Attorney General), for the State.

WRIGHT, C. J.—It seems that all of the grand jurors, summoned by the sheriff under the precept issued to him, in due form, did not attend at the time appointed, and thereupon the court directed the sheriff to complete the panel by selecting talesmen. The prisoner, by plea, set up these facts, and asked, that by reason of the same, the indictment should be set aside. A demurrer to the plea was sustained, and we think correctly.

The objection was, as we understand it, that a precept should have been issued to the sheriff, and that, without such precept, he could not regularly fill the panel. The record and plea, however, both recite that the court directed the sheriff to summon, forthwith, the number necessary to make up the deficiency, which he accordingly did. In this, the court acted in strict accordance with the Code, which provides (section 1647), "that if the requisite number of jurors does not appear by the time appointed, the court may, at any time thereafter, direct the sheriff to summon, forthwith, the number necessary to make up the deficiency." It is not suggested in the plea even, that a precept did not issue, and we need not, therefore, determine, whether the sheriff could not properly complete the list without such written process. It is insisted, however, that a precept is required to be issued by section 6, chapter 133, Laws of 1858, 257. That section was intended to meet the case where all the persons summoned fail to attend, or where it is determined by the court that, for any cause, they were illegally elected and drawn. Under such circumstances, the sheriff is, in obedience to a precept, to summon a new list from the body of the county. The section of the Code is not repealed by any express words, nor is there any conflict between it and the law of 1858. The one governs where a sufficient number fails to attend ; the other, where all fail, or where the selection and drawing were illegal. The case of *Dutell* v. *The State*, 4 G. Greene, 125, if good law, is very far from being analagous to the one before us.

The indictment charges that the defendant, having in his

possession a certain order, "whose tenor follows, that is to say—" (setting it out in words)—on the back of which was an indorsement, "whose tenor follows," (setting it out), did falsely make, forge, and counterfeit, on the back of said order, an indorsement as follows," (setting it out), with intent to defraud, &c. The offense charged is not the forging of an indorsement upon an order drawn, in fact, by the one bank upon another, but one that purported to be so drawn. It is not alleged, in words, that this was the purport of the instrument, but by setting it out, it is shown that it purports to be so drawn.

If the charge had been for forging an indorsement upon an order drawn by a company duly incorporated, then proof of the existence of the incorporation would have been necessary. *State* v. *Newland*, 7 Iowa, 242. Where the charge is that the instrument purported to be so drawn, proof of the existence of the bank is not required. Where such proof is necessary, it need not be by producing the charter or act of incorporation, but by proving what the general reputation is as to the existence of the bank. Code, section 2643. And the language of this section—its spirit, scope, and purpose—includes the proof to be made, where the charge is for falsely indorsing, as well as where it is for falsely making the note, bill, order, or instrument itself. The object was to obviate a very great and acknowledged inconvenience, in the trial of causes for forgery and counterfeiting, growing out of the difficulty in proving the actual existence or incorporation of a chartered company. To confine the statute to causes where the forgery is of the body of a note, bill, or other evidence of debt, and hold that it does not extend to cases of falsely making and uttering indorsements thereon, would leave the remedy in view, and the change of the common law rule, contemplated and intended, but half accomplished. The reason and spirit of the law, if not its very letter, covers both cases.

Nor is it necessary, in such cases, to aver the genuineness or validity of the instrument forged. The essence of the

crime consists in doing the act with the intention to defraud, &c. It is defined to be the false making, or materially altering, with intent to defraud, of any writing, which, if genuine, might be apparently of legal efficacy, or the foundation of a legal liability. And it may be equally forgery, though the person purporting to be the maker or obligor, or otherwise chargeable in the writing, is a mere petitioner's name, because there may be equally an attempt to defraud. 1 Bishop's Cr. Law, section 423, and notes. If the writing is invalid on its face, it cannot be the subject of forgery, for the obvious reason that it has no legal tendency to effect a fraud. Where, however, the invalidity is to be made out by the proof of some extrinsic fact, the instrument, if good on its face, may be legally capable of effecting a fraud, and the party making the same may be punished. 2 Bishop, Secs. 442, 444, and note; 3 Arch. Pl. & Pr., note 1, 547, and especially on 754—11, 12, 13, 14. And the case cited by counsel, (*People* v. *Shall*, 9 Cow., 778), teaches no contrary doctrine. Says Cowen, J : " It is scarcely necessary to observe that the instrument set out in the indictment, is not a promissory note within the statute of Anne ; and it is agreed that the writing does not come within any of the statutes of forgery, it being payable neither in money, nor goods, nor labor. The indictment is, therefore, based upon the common law." And again : " The question presented is, whether the fraudulent making of a writing, void in itself, and so appearing in the indictment, be the subject of a prosecution for forgery." He then proceeds to show that the writing forged, if genuine, would have been a mere nullity for any purpose, and that this invalidity was patent upon the face of the instrument. Thus construing the instrument, there was, of course, no difficulty, under the cases quoted and commented upon by the learned judge, in holding that legal forgery could not be predicated of it. In this case, however, the instrument is, on its face, of at least apparent legal effect. It appears to be an order or draft drawn by one bank upon another, in the ordinary course of business, for a definite sum of money,

payable on demand, or at sight.   To treat it as invalid, we must assume the non-existence of both institutions, a presumption no more allowable in cases of this character, than if the instrument had been drawn by one individual upon another.

The suggestion, that as the order had already been assigned by the genuine indorsement of the payee, to " Fay or bearer," the writing of the name of Fay was not necessary to the transfer of the instrument, and that therefore no fraud could possibly have been perpetrated, is without force.   It is without force, because it is not necessary, in order to constitute the crime, that any person should have been defrauded in fact.   The attempt to defraud, and the intention to do so, is sufficient.   If, however, the act is not of a nature which could, under any circumstances, and however far carried, do execution, it cannot be said to amount to such an intent to defraud as to constitute forgery.   1 Bishop, section 423, ch. 25 and note.   In this case, it is manifest that this last rule has no place, from the fact that, while the writing of the name of the indorsee, Fay, was not necessary to negotiate or transfer the instrument, it purported to, and was intended, to increase the liability of the person whose name was thus written.   The subsequent holder of the instrument, treating the indorsement as genuine, had, as a consequence of it, the responsibility of Fay, as well as the prior indorsers.

We have thus, without referring to the causes of demurrer in detail, stated what we understand to be the law governing the questions presented.   And as some of the same questions are made in the objections taken to the instructions, what has been said sufficiently disposes of that part of the case.   We may add, however, that while the first instruction, if taken abstractly, without reference to the others, or the case actually upon trial, might be erroneous; yet, when viewed in connection with the matter before the court and jury, as every instruction should be, it is not objectionable.   Its meaning is, not that the mere signing of the name

The State of Iowa v. Pierce.

of another, without more, would constitute forgery, but that forgery might be committed by signing such a name, as an indorsement, upon the back of an instrument like that introduced in evidence. When thus considered, it would be correct.

In making up the trial jury, the district attorney challenged a juror peremptorily, and then the defendant one. The panel being again full, the defendant's counsel insisted that the state should exercise a second peremptory challenge, if any more was to be made; but the court refused this, and required the defendant to challenge the second time, before the state again exercised the right, and ruled that upon the failure to do so, the defendant would waive the privilege as to one juror. This is now assigned for error.

A defendant, when on his trial for a felony, where the punishment is less than imprisonment in the penitentiary for life, may challenge peremptorily six jurors, and the state three. Code, sec. 2981. In what order this right is to be exercised, is not provided for expressly by our law. The rule in civil cases is, that the parties challenge alternately, commencing with the plaintiff. In the absence of any statutory rule, we think that the order of proceeding may be properly left to the discretion of the judge trying the cause, and we would not interfere with its exercise, unless in a case clearly showing that it had been abused.

The rule adopted in the present case, seems to us fair and equitable, and is in strict analogy to that prescribed in the trial of civil causes. In civil cases, the parties have a right to each challenge five jurors; whereas, in criminal cases, the state can challenge but half as many as the defendant. A rule which would permit the defendant to reserve all his challenges, until the state had exhausted all those allowed to it, finds no warrant certainly either in the letter or spirit of our law, and has neither necessity nor fairness to recommend it.

The name of L. H. Mason was indorsed on the back of the indictment. Upon the trial, the state called *Levi* H. Mason, and the defendant objected that the witness could not testify, for the reason that his name was not upon the indictment, and no notice had been given, as required by chapter 109 of Laws of 1858. This objection was overruled, and we think very properly. The point of objection is, that though the name of L. H. Mason was indorsed on the indictment, this could not authorize the introduction of a witness named *Levi* H. Mason. The court could well conclude, however, that the witness was the same in both cases. It is not a case even where the initials used would be likely to point to some other person as the witness, and thus mislead the prisoner. It nowhere appears that the witness sworn, was any other than the one examined before the grand jury, and whose name was indorsed on the indictment. On the contrary, it is reasonably certain that they were the same.

It has been determined that under the Code, the state was not confined, on the trial of a cause, to the witnesses examined before the grand jury. *State* v. *Abrahams,* 5 Iowa, 117. What change, if any, the law of 1858, chapter 109, has made, we need not determine, as, for the reasons before stated, we think the witness was properly permitted to testify.

The judgment of the court below must be affirmed. Before dismissing the case, however, we remark that we do not understand the case of *Smith* v. *The State,* 4 G. Greene, 189, to necessarily decide anything different from what is held above on the subject of peremptorily challenging jurors. In that case, the district court held that the defendant could not be permitted to challenge even two jurors, until the state had challenged one; and, consequently, that if the state failed to exercise the right, the defendant would thereby be deprived of the right to challenge. Such a rule was held to be erroneous, and more than this, it was not necessary to decide. The two cases are, as we think, very different.

Judgment affirmed.